NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000626**
**07-JUN-2019**
**07:59 AM**

NO. CAAP-18-0000626

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DOMINICK OBERLE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-18-0000256)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Dominick Oberle (**Oberle**) appeals from a "Judgment of Conviction and Sentence" (**Judgment**) entered on July 26, 2018 by the Circuit Court of the First Circuit (**circuit court**).[1]  Oberle was convicted of Burglary in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 708-811 (2014).[2]

---

[1]  The Honorable Karen T. Nakasone presided.

[2]  HRS § 708-811 provides:

§708-811  **Burglary in the second degree.**  (1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.
(2)  Burglary in the second degree is a class C felony.

On appeal, Oberle contends that Plaintiff-Appellee State of Hawai'i (**State**) failed to produce substantial evidence to establish that he unlawfully entered the premises of 405 North King Street and thus his conviction should be reversed.

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments and issues they raise, as well as the relevant statutory and case law, we resolve Oberle's point of error as follows and affirm.

When reviewing the sufficiency of evidence on appeal,

> [e]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (citation omitted). "Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (internal quotation marks and citation omitted).

In the instant case, the State charged Oberle with Burglary in the Second Degree, alleging that:

> [o]n or about February 17, 2018, in the City and County of Honolulu, State of Hawaii, DOMINICK OBERLE did intentionally enter unlawfully in a building, to wit, The Fighter's Corner, situated at 405 North King Street, with intent to commit therein a crime against a person or property rights, thereby committing the offense of Burglary in the Second Degree in violation of Section 708-811 of the Hawaii Revised Statutes.

(Emphasis added).[3]

Oberle contends that the State adduced insufficient evidence at trial to enable a jury to conclude that Oberle had unlawfully entered a store called "The Fighter's Corner" through a door located at 405 North King Street. Oberle asserts that the

---

[3] The State did not charge that Oberle unlawfully remained in the building.

2

evidence at trial instead established that on February 17, 2018, Oberle had entered "The Fighter's Corner" while the store was open to the public through an unlocked door at 405 North King Street which had no sign or indication that entrance through such door was restricted. As such, Oberle asserts that his entrance via the door at 405 North King Street was lawful because he was licensed and privileged to enter "The Fighter's Corner", and he was not given a lawful demand to leave the store. We disagree.

Based on the testimony of the store's owner, Mark Pang (**Pang**), "The Fighter's Corner" is a retail store located in Honolulu, Hawai'i which sells various martial arts equipment. "The Fighter's Corner" consists of two units: a storefront unit located at 403 North King Street (**storefront unit**), which contains the store's merchandise for sale and is where retail transactions are conducted; and an adjacent warehouse unit, located at 405 North King Street (**warehouse unit**), which contains the store's inventory and an office area. Inside, both units are connected by a "go-between" door that was installed when the store expanded into two units. Photographs in evidence show that, from the outside, the storefront unit and the warehouse unit are separately accessible by their own respective doors fronting each unit.

Pang further testified that the entrance to the storefront unit is where members of the public are permitted to enter, and the storefront unit is where the sales transactions are conducted. Pang further testified that the entrance to the warehouse unit, which is adjacent to the entrance of the storefront unit, is normally always locked, and that members of the public are not allowed to enter that door. However, Pang testified that on February 17, 2018, the entrance to the warehouse unit was mistakenly left unlocked because he had previously opened the door to clean the windows, and had forgotten to lock it upon finishing.

It is undisputed that on the day of the alleged offense, Oberle entered through the unlocked <u>warehouse unit door</u>

3

while the storefront unit of "The Fighter's Corner" was open to the public. Pang discovered Oberle in the warehouse unit wearing compression shorts that were identified as the store's merchandise which had been stored in the warehouse unit and removed from its packaging. Pang testified that he had never previously met Oberle, and that Oberle did not have permission to enter the warehouse unit.

Oberle contends that he was licensed and privileged to enter "The Fighter's Corner" through the warehouse unit entrance because he had entered during business hours and the door to the warehouse unit was unlocked, with no sign or indication that entrance through such door was prohibited.[4] However, there is sufficient evidence that Oberle's privilege to enter the storefront unit of "The Fighter's Corner", located at 403 North King Street, did not include permission to enter the separately secured warehouse unit located at 405 North King Street. See State v. Vowell, 9 Haw. App. 307, 311-13, 837 P.2d 1308, 1311-12 (1992) (holding that an individual's license or privilege to enter a building which is otherwise open to the public does not include permission to enter a separately secured area of the building, even when the doors to those separate areas were unlocked), cert. denied, 74 Haw. 652, 843 P.2d 144 (1992).

HRS § 708-800 (2014) includes the definitions of the terms "building" and "enter or remain unlawfully", which delineates between units within a building which is only partly open to the public:

> "Building" includes any structure, . . . ; each unit of a building consisting of two or more units separately secured or occupied is a separate building.
>
> . . . .
>
> "Enter or remain unlawfully" means to enter or remain in or upon premises when the person is not licensed, invited, or otherwise privileged to do so. A person who,

---

[4] Pang testified that "The Fighter's Corner" does not maintain regular business hours, and instead has a "rotating schedule" that is based on Pang's availability to open the store. Pang testified that on February 17, 2018, the store was open to the public from 10:00 am to 3:00 pm.

4

> regardless of the person's intent, enters or remains in or upon premises which are at the time <u>open to the public</u> does so with license and privilege unless the person defies a lawful order not to enter or remain, personally communicated to the person by the owner of the premises or some other authorized person. <u>A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public</u>.

(Emphases added).

Under the plain language of HRS § 708-800, Oberle cannot claim a license or privilege to enter the warehouse unit if such an area is not "open to the public." Given the evidence adduced at trial, there is substantial evidence to establish that the warehouse unit was not open to the public. As previously noted, the storefront unit and warehouse unit are separately secured. The warehouse unit can be secured from the inside via the "go-between" door,[5] and both units are separately accessible from the outside through their respective entrances. The warehouse unit was used to store inventory and was not where sales transactions were conducted. Furthermore, the store's owner, Pang, testified that members of the public were not allowed into the warehouse unit, and that the door is normally kept locked because "no one should have access to that door."[6]

The evidence also included several photographs of "The Fighter's Corner" depicting the interior of the warehouse unit and the exterior of both the storefront unit and the warehouse unit. The photographs reveal differences between the entrances to the storefront unit and the warehouse unit, which, taken in the light most favorable to the State, supports the conclusion

---

[5] The "go-between" door, which was accessible only from the inside of "The Fighter's Corner", has a sign in the storefront unit reading "VIP AND EMPLOYEES ONLY". Although the sign was not visible to Oberle, who had entered from the outside through the warehouse unit entrance, such evidence further establishes that the warehouse unit was not open to the public.

[6] While Oberle points out that the warehouse unit entrance did not have signs or instructions indicating that entrance was prohibited, the door similarly did not have any signs welcoming customers to enter the store through the warehouse unit.

that the storefront unit was open to the public, whereas the warehouse unit was not.[7]

When viewed in the light most favorable to the State, there was substantial evidence to indicate that the warehouse unit constituted a "building" not open to the general public within the meaning of HRS § 708-800, and Oberle was therefore not licensed or privileged to enter.  See Vowell, 9 Haw. App. at 311-13, 837 P.2d at 1311-12.  Accordingly, Oberle's entry into the warehouse unit was unlawful.

Additionally, there is sufficient evidence to support the conclusion that Oberle did intentionally enter unlawfully into the warehouse unit.  See State v. Chin, 112 Hawai'i 142, 146, 144 P.3d 590, 594 (App. 2006) (holding that unlawful entry may be proven by circumstantial evidence, and does not require direct evidence).

Oberle's statement to Detective Victor Lau of the Honolulu Police Department (**Detective Lau**), which was recorded the day after the alleged incident, and published to the jury at trial, include statements by Oberle that indicate he knew the warehouse unit door was not suppose to be open.  During Oberle's statement, Detective Lau asked Oberle if he had been in "The Fighter's Corner" before, to which Oberle answered: "[a]ctually, yesterday -- last night.  I went over there last night to turn around and tell them that that door was open already.  I said,

---

[7]  The photographs of the exterior of the storefront unit shows in relevant: (1) a notice stating "NO SHIRT, NO SHOES, NO SERVICE" and "WE RESERVE THE RIGHT TO REFUSE SERVICE TO ANYONE"; (2) a sign indicating which payment methods are accepted at the store; (3) a "PULL" sign indicating the proper method of entry through the door; and (4) an electronic "OPEN" sign. The photographs show that the glass door and windows to the storefront unit were transparent such that members of the public could see into the store. The photographs also show a "FIGHTER'S CORNER" sign hanging above the storefront unit entrance.

In contrast, photographs of the exterior of the warehouse unit show that the glass door and windows looking into the warehouse unit have been covered with various advertisements and signs blocking visibility into the unit.  The signs that are displayed on the storefront unit door mentioned above are not displayed on the warehouse unit door, and there is no overhead "FIGHTER'S CORNER" sign hanging above the warehouse unit's entrance.

'[h]ey, one of your guy's doors is open, brah. If I was you guys, I would go around and close it.' That door has already been open. It was open yesterday."

Oberle's own testimony about the incident at trial also provided indicia that he had intentionally entered the warehouse unit unlawfully. Oberle testified that on the date of the alleged offense, prior to entering the warehouse unit, he was "cruising" outside a bar adjacent to "The Fighter's Corner", when an unidentified "older oriental man" approached him and offered to pay Oberle money if he entered "that door next door" and "[j]ust clean[ed] the place or something." Oberle testified that he told the unidentified person that he would need to think about it, and that he believed that the person was referring to the entrance located at 405 North King Street, which Oberle eventually entered.[8]

While Oberle maintained that he believed he could lawfully enter through the warehouse unit entrance because he had been invited to do so, his testimony also suggests he knew that entry through such door was unlawful. Oberle acknowledged that this situation seemed "a little weird" and "suspicious", but decided to "take a chance." Oberle also indicated in his testimony that he had previously frequented and is familiar with this area. Such comments can be construed to infer that Oberle understood that entry through the warehouse unit was unlawful, and provides further evidence supporting the intentional unlawful entry element of his burglary conviction. See Chin, 112 Hawai'i at 147, 144 P.3d at 595 (holding that defendant's own words and actions can be considered as substantial evidence to support the unlawful entry element in a burglary conviction). Although Oberle testified that he believed he could lawfully enter through the warehouse unit door, and that it was open to the public, the jury did not find his explanation credible.

---

[8] Oberle testified that the unidentified person did not lead him into the warehouse unit.

Finally, the State also admitted into evidence a surveillance video of Oberle entering the warehouse unit on the date of the alleged offense. The surveillance video shows Oberle sitting on the sidewalk outside the entrance to the warehouse unit. He then stands up, glances right, then left, then right, and then left again prior to entering the warehouse unit. Along with the other evidence, the surveillance video can reasonably be construed as behavior that is not consistent with someone who believes that they are entitled to enter through that door.

Viewed in the light most favorable to the State, there is sufficient evidence to enable a person of reasonable caution to conclude that Oberle did intentionally enter unlawfully into the warehouse unit of "The Fighter's Corner".

Therefore, IT IS HEREBY ORDERED that the Circuit Court of the First Circuit's "Judgment of Conviction and Sentence", filed July 26, 2018, is affirmed.

DATED: Honolulu, Hawai'i, June 7, 2019.

On the briefs:

Emmanuel G. Guerrero,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

8